IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| COREY JAWAN ROBINSON, ) | Civil Action No.: 4:07-cv-1077-HMH-TER |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs ) | |
| ) | REPORT AND RECOMMENDATION |
| KENNY GREEN, CHARLOTTE DICKEY, ) | |
| ANNIE SELLERS, ELAINE REDFEARN ) | |
| MILLER, CHARLES ROLLINS, III, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## I. PROCEDURAL BACKGROUND

The plaintiff filed this action under 42 U.S.C. § 1983,[1] on April 23, 2007. The defendants filed an answer to the complaint on June 20, 2007. On August 3, 2007, defendants filed a motion for summary judgment along with a memorandum and affidavits in support of the motion. (Document #28). By order of this court filed August 6, 2007, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment procedure and the possible consequences if he failed to respond adequately. (Document #29). Plaintiff filed a response to the motion for summary judgment on August 20, 2007. (Document #35). Defendants filed a reply on August 30, 2007, with additional affidavits.

## II. DISCUSSION

---

[1]All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02 (B)(2)(d),DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the District Judge.

## A. FACTS/ARGUMENTS OF PARTIES

The plaintiff filed this action alleging violations of his constitutional rights on the basis of excessive force and subjecting him to cruel and unusual punishment in administering OC pepper spray. Further, plaintiff alleges he was denied his due process rights by refusing to call an employee he requested in a disciplinary hearing. Plaintiff was incarcerated at Evans Correctional Institution ("Evans") at all times relevant to the issues raised in his complaint. He asserts that his constitutional rights were violated based on the following allegations set forth in his complaint, quoted verbatim:

> [I] was disembarking from a disciplinary hearing under the escort of Officer C. Dickey. When I request permission to utilize the lapatory [sic]. In response Officer C. Dickey refused to allow me. Consequently because of the urgency I disregarded her directive and enter the restroom. Upon commencing to urinating Officer C. Dickey open the restroom door and state verbatim you need to hurry your honary ass up. Subsequently, I stated and reiterate with veracity, you just came in here to see my dick. Furthermore after a continuous bilateral disparaging dialogue, Off. C. Dickey started administering gas at me. Stated I'll fix his ass and called 1st response. Then she in explanation to Captain K. Green was pervaracting [sic] as to the reason why she administered gas at me and stated I was masturbating and attempted to expectorate on her. Now whiles already incapacitated because of the restraints and gas previously administered and decorum no longer contumacious [sic], Captain K. Green gas me again for no apparent reason other than to be vindictive his action and demeanor along with Officer C. Dickey was a blatant exemplum [sic] of use of excessive force additionally a violation of my 8th Amendment constitutional rights cruel and unusual punishment and SCDC use of force policy. I did not see medical nor was I treated, no change of clothes and no shower after the incident, Officer Charles Rollins was present during some of this incident and try to rinse my eyes out but the water was too hot and burned even more. I then was charged with a falsify charge of (802) sexual assault to cover the use of excessive force. I then went in front of the DHO A. Sellers for a disciplinary charge on date of 5/25/06 and was denied due process rights, equal protection rights . . . the right to present documentary evidence and to request witness(es) and the right to a counsel substitute which Mr. M. Hunter was suppose to assist me at my hearing but did not because of him and Office C. Dickey inappropriate sexual behavior making gestures at each other. Which I was removed from my hearing and 14th Amendment violated. I then submitted two different grievances on my appeal on for the 14the Amendment violation and the other for counsel substitute M. Hunter and Ofc. C. Dickey gestures and inappropriate sexual behavior . . .

Plaintiff also attached his declaration to the complaint in which he asserts that "It could of been no way possible for me to be masturbating because I was incapacitated in handcuffs (restraints) with belly chain only six inches handcuff approximately, that would not and I repeat would not have given me any distant to commit such a act." Plaintiff also asserts in his declaration that he was gassed once in the eyes and facial area and another time on his private parts. Plaintiff further declares "Officer C. Dickey states I ran out the bathroom into the kitchen and after being administered with gas was told to lay down on the floor, which I refused 3 times and state my eyes was burning (she did not state that I was laughed at and made fun of while still on the floor, incapacitated with handcuffs, belly chains and being previously administered with gas by both officer Charlotte Dickey and Captain Kenny Green more than enough times excessive)." Plaintiff also declares that "Officer C. Rollins deliberately turned the water extremely hot water and tried to rinse out my eyes and from the burning of the water and OC pepper spray caused physical harm to my eyes. . ." (Plaintiff's declaration).

Plaintiff also submitted an unwitnessed document signed by inmate Newton Sloan along with plaintiff's declaration asserting that he was submitting a statement from inmate Newton Sloan. In this statement, it is asserted as follows:

> On the date of 5-24-06 I (I/m Newton Sloan) witness Ofc. Dickey approach cell #117, occupied by I/m Corey Robinson, laughing and antagonizing him with obnoxious remarks such as do his genitals still burn. Furthermore she made the threating [sic] comment of messing with her I/m Robinson will never go home. You must have forgot I was present when you saw the parole examiner. Quote. Anyway you are an inmate who is gone take your word over mine. Then finally she left the wings. I present this statement with veracity and accuracy.

(Document # 4).

Plaintiff requests compensatory and punitive damages, sexual assault charge be dismissed, for defendants to lose their jobs and serve prison time, and nominal damages. (Complaint).

Defendants filed a motion for summary judgment and submitted affidavits in support thereof. Defendants submitted the affidavit of Charlotte Dickey who attests that while leading the inmate back to his cell from a disciplinary hearing, he disregarded her directive and ran into a restroom where he began masturbating. Dickey attests that she instructed him to stop and come out of the restroom which he refused to obey her directives. Dickey attests that she administered a burst of OC pepper spray into the chest and face area to get plaintiff under control. Dickey attests that he still refused to comply with her directives requiring her to seek the assistance of Captain Green who instructed her to administer another blast of pepper spray. Dickey avers that plaintiff ran into the cafeteria where Officer Rollins flushed his eyes with water. Dickey attests that at all times, appropriate restraint was administered as he was not following commands. (Affidavit of Dickey).

Attached to their reply, defendants submitted the affidavit of Charles Rollins who attests that he is employed at the Evans Correctional Institution. Rollins attests that at all times alleged in the complaint, appropriate restraint, in the form of OC pepper spray, was administered to plaintiff as he was not following commands to lay down and cease running about while being lead back to his cell by Officer Dickey. Immediately after plaintiff was brought under control, Rollins attests that he flushed his eyes with water. (Rollins' affidavit).

Defendants submitted the affidavit of Kenny Green who attests he is employed at the Evans Correctional Institution and that appropriate restraint was administered in the form of OC pepper spray to plaintiff as he was not following commands given by Officer Dickey. Green attests that Officer Dicky used appropriate force to gain control of an inmate. (Green affidavit).

4

Defendants submitted the affidavit of Annie Sellers who attests that she is employed at Evans Correctional Institution. Sellers attests that plaintiff was afforded due process at all hearings and as per policy, only those employees on duty and present during the incident which was the subject matter of the disciplinary hearing were called as witnesses. Sellers attests plaintiff has a history of sexual misconduct in the presence of female officers or employees. Sellers attached the SCDC offender Management System Disciplinary System Inmate Offense history detailing his conviction for such activity. (Sellers' affidavit).

A review of plaintiff's disciplinary record reveals plaintiff has been convicted of sexual misconduct seventeen times and had convictions for sexual assault, fighting, and threatening to inflict harm. (See SCDC Offender Management System Report attached to Sellers' affidavit.).

## B. STANDARD FOR SUMMARY JUDGMENT

Defendants filed their motion for summary judgment pursuant to Rule 56, FRCP. Because defendants are the moving party, it bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), FRCP; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine issue for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine issue for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-

moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

### C. ANALYSIS

The undersigned has considered the merits of the case, the evidence, and the affidavits submitted and concludes that the plaintiff has failed to show that defendants violated any of his constitutional or statutory rights under 42 U.S.C. §1983. Because prison officials must act "in haste, under pressure, and frequently without the luxury of a second chance," deliberate indifference is not a sufficiently rigorous standard. Whitley v. Albers, 475 U.S. 312 (1986). The courts have consistently recognized that prison officials are entitled to use force, and that not every action taken by prison officials amounts to excessive force. Stanley v. Hejirika, 134 F.3d 629 (4th Cir. 1998). "After incarceration, only the unnecessary and wanton infliction of pain constitutes . . . cruel and unusual punishment forbidden by the Eighth Amendment." Whitley, 475 U.S. at 319.

An inmate must satisfy both a subjective requirement and an objective requirement in order to prove that prison officials violated his constitutional rights through use of excessive force. To satisfy the subjective requirement, he must show that the force used by the corrections officers

6

"inflicted unnecessary and wanton pain and suffering." Hudson v. McMillan, 503 U.S. 1, 6 (1993). In analyzing the subjective requirement, four factors must be balanced to determine whether the prison officials acted "maliciously and sadistically for the very purpose of causing harm" as set forth in Whitley v. Albers at 320-21: (1) the need for application of force, (2) the relationship between that need and the amount of force used, (3) the threat "reasonably perceived by the responsible officials," and (4) "any efforts made to temper the severity of a forceful response."

Additionally, an inmate must satisfy an objective requirement, ie., he must show that the actions of the corrections officers, taken in context, were "objectively harmful enough" to offend "contemporary standards of decency." Id. at page 8. In determining whether the objective component is satisfied, the force applied and the seriousness of the resulting injury against the need for the use of force must be evaluated. Plaintiff has not met this burden.

From the evidence presented, it is appropriate to conclude that the amount of force used to have plaintiff comply with orders was reasonable and no genuine issue of material fact exists regarding the use of force by the prison guards "maliciously for the very purpose of causing harm." Williams v. Benjamin, 77 F. 3d 756 (4th Cir. 1996).

In addition, viewing the facts in the light most favorable to the plaintiff, his injuries were de minimis. If a prisoner's injury is de minimis, then the prisoner's excessive force claim fails as a matter of law. Norman v. Taylor, 25 F.3d 1259, 1262 (4th Cir. 1994). Plaintiff's injuries do not warrant a finding of a constitutional violation and recovery of damages. Plaintiff did not allege any medical problems or permanent injury as a result of the pepper spray.

Furthermore, decisions relating to the day-to-day operation of prisons are entrusted to the officials of the particular institution or correctional system. See Olim v. Wakinekona, supra. Federal

7

courts must accord deference to state corrections departments with respect to the operation of the particular institution or prison system.  Block v. Rutherford, supra; Rhodes v. Chapman, supra. Plaintiff, like any prisoner, cannot expect the amenities, conveniences, and services of a good hotel. Harris v. Fleming, supra.  As previous discussed, the Supreme Court noted that the administration of state prisons is a complex task, with numerous administrative goals, including the maintenance of order and discipline within the prison, the prevention of escapes and, to the extent possible, the rehabilitation of the inmates.  These complex responsibilities are "not readily susceptible of resolution by decree" by the courts, because they require both expertise and the commitment of a variety of resources, which the states implement with extensive planning. The Supreme Court also noted that unless some prison practice offends constitutional principles, federal courts should decline to second-guess decisions made by prison officials.

As previously stated, plaintiff alleged in his complaint that his due process rights were violated during his disciplinary hearing as he was not allowed to call a witness. In plaintiff's declarations, he discusses an incident on May 16, 2006, between plaintiff, Officer Dickey and Officer Brown. Plaintiff alleges that due to the incident on May 16, 2006, defendant Dickey deliberately acted in retaliation by using the gas not as a control device but maliciously for the purpose to cause harm on May 18, 2006. Therefore, plaintiff appears to argue that he was not allowed to call Officer Jerome Brown as a witness to the charges of May 18, 2006. However, Brown was not present during the incident on May 18, 2006, plaintiff has not alleged Brown was present, and Sellers attests that per policy, only those employees on duty and present during the incident which was the subject matter of the disciplinary hearing were called as witnesses. As Officer Brown was not present, plaintiff was not allowed to call him as a witness. Further, even if plaintiff had called him as a

witness, Brown could only testify to the incident on May 16, 2006, which he had already done over the speaker phone according to plaintiff's declaration. Therefore, defendants did not violate plaintiff's constitutional rights by not allowing him to call a witness that was not present during the incident. Segarra v. McDade, 706 F.2d 1301, 1304-05 (4th Cir. 1983) (refusal to allow inmate to call witness did not violate due process when inmate was familiar with disciplinary board, inmate refused to give prior notice of witness, and witnesses' testimony was irrelevant).

### D. QUALIFIED IMMUNITY

Defendants argue they are entitled to qualified immunity as plaintiff has failed to demonstrate that the discretion exercised by thee defendants in the performance of their duties violated any such particularized right.

Although the burden of showing immunity remains on the defendants, an early determination is desirable, since immunity provides complete protection from a lawsuit, including from extensive discovery or other preparation. When a defendant asserts that he or she is completely immune from suit, the court must consider whether the defense meets the standard set forth by various courts which have considered the issue. When a person is sued in his individual capacity, the court may consider whether that person is entitled to immunity from suit. Immunity is a defense to be asserted by the defendant and the burden of proving entitlement to immunity rests with the defendant asserting it. The defendants argue that they are entitled to qualified immunity in their individual capacity.

The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether the defendant is protected by this immunity.

That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow, 457 U.S. at 818.

In a discussion of qualified immunity, the Court of Appeals for the Fourth Circuit stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general of abstract level, but at the level of its application to the specific conduct being challenged. Moreover, the manner in which this [clearly established] right applies to the actions of the official must also be apparent. As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F. 3d 993 (4th Cir. 1994) (internal citations omitted), cert. denied, 516 U.S. 824 (1985).

In Torchinsky v. Siwinski, 942 F. 2d 257 (4th Cir.1991), the Fourth Circuit Court of Appeals explained the rationale for Harlow qualified immunity:

> The grant of qualified immunity to government officials ensures that these officials can perform their duties free from the specter of endless and debilitating lawsuits. Without such immunity, the operations of government would be immobilized. Permitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their

duties.

Torchinsky, 942 F.2d at 260-261. (Citations Omitted).

The Torchinsky court further noted that "a particularly appropriate procedure for determining an official's entitlement to qualified immunity is summary judgment." The Torchinsky court held that an official's entitlement to qualified immunity is based upon an "objective reasonableness" standard. "The very idea of reasonableness requires that courts accord interpretive latitude to officials judgments." Torchinsky, 942 F. 2d at 261, citing Sevigny v. Dicksey, 846 F. 2d 953 (4th Cir.1988). Therefore, a plaintiff may prove that his rights have been violated, but the official is still entitled to qualified immunity if a reasonable person in the "official's position could have failed to appreciate that his conduct would violate" those rights. Torchinsky, 942 F. 2d at 261, citing Collinson v. Gott, 895 F. 2d 994 (4th Cir. 1990). As the Fourth Circuit explained in the case of Swanson v. Powers, 937 F. 2d 965 (4th Cir.1991), "[o]nly violations of those federal rights clearly recognized in existing case law will support an award in damages under 42 U.S.C. § 1983." 937 F. 2d at 967. Therefore, if a particular action by a state agency is deemed unconstitutional, the defendant is entitled to qualified immunity, unless there is clearly established case law demonstrating that the alleged conduct is violative of the Constitution.

In Maciariello v. Sumner, 973 F. 2d 295 (4th Cir. 1992), the Fourth Circuit Court of Appeals further explained the theory of qualified immunity when it set forth that:

> Governmental officials performing discretionary functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be

11

> clearly established in the law. Second, the manner in which this right applies to the actions of the official must also be apparent. Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

Maciariello, 973 F. 2d 295, 298 (4th Cir. 1992) (Citations omitted).

For a plaintiff to recover, he must show the defendants (i) violated a particular right clearly established in law, and (ii) the application of that right to the actions of the official must be apparent. The plaintiff in this case has not done so. The undersigned cannot conclude that the defendants in this case "transgressed bright lines . . . officials are not liable for bad guesses in gray areas." Maciariello, supra. Therefore, the undersigned recommends that the motion for summary judgment filed by the defendants be granted on the basis of qualified immunity.

## E. ELEVENTH AMENDMENT IMMUNITY

The defendants contend that the plaintiff's §1983 claims against the defendants for money damages in their official capacities are barred pursuant to their Eleventh Amendment Immunity. Defendants also argue that the action against the defendants should be dismissed as a matter of law to the extent that they are sued in their official capacity because while acting in their official capacity as employees of the SCDC they are not a "person" under 42 U.S.C. §1983 and, therefore, are not subject to suit.

When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest. If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution. Although declaratory and/or injunctive relief may

be granted, damages may not be awarded against the state.

In the case of Will v. Michigan Department of State Police, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity (cites omitted) or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the Court found that state agencies, divisions, departments and officials are entitled to the Eleventh Amendment immunity. Will, supra at 70. In reaching this conclusion, the Court held that a suit against state officials acting in their official capacities is actually against the office itself, and therefore, against the state. State officials may only be sued in their individual capacities.

There is no dispute that the defendants were employees of the SCDC and, thus, state officials acting in their official capacity while employed by the SCDC. Therefore, they are entitled to Eleventh Amendment immunity from monetary damages in their official capacity.

## F. PENDENT JURISDICTION

Assuming plaintiff's § 1983 claim is dismissed by this Court and plaintiffs' complaint somehow can be conceived to state an additional claim for relief under any state common law

theory, the undersigned concludes that such claim(s), if any, ought to be dismissed as well for want of jurisdiction. Specifically, this Court can decline to continue the action as to the pendent claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).

### G. INJUNCTIVE RELIEF

Defendants argue that any claim plaintiff may have for injunctive or declaratory relief is moot since he is no longer incarcerated at Evans Correctional Institution.

Claims for injunctive and declaratory relief become moot when a prisoner is no longer subjected to the condition complained of. <u>Williams v. Griffin</u>, 952 F.2d 820, 825 (4th Cir. 1991); <u>Ross v. Reed</u>, 719 F.2d 689, 693 (4th Cir. 1983).

### III. CONCLUSION

Based on the above, the undersigned RECOMMENDS that defendants' motion for summary judgment (document # 28) be GRANTED.

Respectfully submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

October 22, 2007
Florence, South Carolina

**The parties' attention is directed to the important information on the attached notice.**